WALKER, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 79-047-CR. Argued May 21, 1979.—Decided August 6, 1979.*
(Also reported in 286 N.W.2d 2.)

---

† Petition to review granted.

For the plaintiff in error, there were briefs by *Richard L. Cates,* state public defender and *William J. Tyroler,* assistant state public defender, with oral argument by *William J. Tyroler.*

For the defendant in error, there was a brief by *Bronson C. La Follette,* attorney general and *Chris C. Heikenen,* assistant attorney general, with oral argument by *Chris C. Heikenen.*

Before Voss, P.J., Brown, J., and Robert W. Hansen, Reserve Judge.

HANSEN, J.   On January 21, 1978, the jury convicted the defendant, Emery Walker, of attempted first-degree murder, contrary to secs. 940.01 and 939.32, Stats.   On March 2, 1978, Walker was given a fifteen-year sentence. Post-conviction motions were denied on August 28, 1978.

In the early morning hours of September 30, 1977, Walker and Robert Piper engaged in a kind of "shoot out" outside a tavern in Kenosha.   Both men had .22 caliber pistols; Piper also had a starter pistol which fired blanks.   Piper was shot in the abdomen, and Walker was shot in the right leg.

Earlier in the evening, Piper had shown his pistol to Donna Johnson, who claimed that Piper threatened her. Walker had a conversation with Piper shortly afterwards.   Later, Walker went into the tavern, spoke briefly with Piper and went outside, followed by Piper.   The shootings occurred when they were both outside.

The testimony conflicts sharply on the nature of the conversations and the actions of the combatants.   Each claimed that the other shot first and that he fired in self-defense.   Three scenarios emerge from the testimony.

First, Piper testified that he and Walker had been discussing a sale of drugs and that he followed Walker out of the tavern for that purpose. Once outside, Walker told Piper that he was "a dead man" and shot him from a distance of eight feet. Piper then drew his pistol and shot at Walker as he ran away evasively.

Second, Walker testified that he asked Piper why he had pulled a gun on Johnson. Piper pulled his gun, and Walker tried unsuccessfully to hit Piper. Piper shot him in the leg from a distance of two feet. Walker then fired at Piper as Walker ran away.

Third, some of the other witnesses testified that Walker either shoved or punched at Piper immediately before the shooting. Piper then shot Walker, who returned the fire as he fled.

The trial court denied Walker's request for submission of endangering safety by conduct regardless of life[1] as a lesser included offense. In its instructions to the jury, the trial court submitted instructions over Walker's objection on the natural and probable consequences of Walker's actions,[2] and the qualified or absolute loss of the self-defense privilege.[3] Post-conviction motions alleging error in these decisions were denied. These same allegations of error are before us on writs of error.

Contrary to the State's argument, endangering safety by conduct regardless of life is a lesser included offense of attempted first-degree murder.[4] This is because en-

---

[1] 941.30 Endangering safety by conduct regardless of life. Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony.

[2] Wis J I—Criminal 1105.

[3] Wis J I—Criminal 815.

[4] *Holmes v. State*, 63 Wis.2d 389, 399, 217 N.W.2d 657, 663 (1974); *Thomas v. State*, 53 Wis.2d 483, 489, 192 N.W.2d 864, 867 (1972); *State v. Melvin*, 49 Wis.2d 246, 251, 181 N.W.2d 490, 493 (1970); *Holesome v. State*, 40 Wis.2d 95, 101, 161 N.W.2d 283, 286 (1968).

dangering safety contains all of the elements of second-degree murder except the resulting death, and second-degree murder contains all of the elements of first-degree murder except for intent.[5]

The mere fact that endangering safety is a lesser included offense, however, does not mean that it must be submitted to the jury. The court has repeatedly held "to justify the submission for conviction of a lesser offense included in a greater crime there must be some reasonable ground in the evidence for a conviction of the lesser offense and an acquittal of the greater offense."[6] That is:

If the evidence in one reasonable view would suffice to prove the guilt of the higher degree of crime beyond a reasonable doubt and if under a different but reasonable view the evidence would be sufficient to prove the guilt of the lesser offense beyond a reasonable doubt and also leave a reasonable doubt as to some element included in the higher degree but not in the lesser, the court could and should submit both degrees and offenses.[7]

The distinguishing element between attempted first-degree murder and endangering safety by conduct regardless of life is the defendant's intent to kill the victim. If the evidence could reasonably support a finding that Walker did not intend to kill Piper but nevertheless engaged in imminently dangerous conduct evincing a depraved mind, regardless of human life, the lesser included offense should have been submitted to the jury.

A jury could reasonably believe the first scenario and find that Walker intended to kill Piper. Thus, the submission of attempted first-degree murder was proper. If the jury had believed the second scenario, they would have returned a verdict of acquittal. Walker's version

---

[5] *Holesome v. State, supra* note 4.

[6] *State v. Melvin,* 49 Wis.2d at 252, 181 N.W.2d at 493–94.

[7] *Holmes v. State,* 63 Wis.2d at 400, 217 N.W.2d at 663.

of the facts supports a finding that he acted in self-defense.

The third scenario, however, does not fall precisely into either verdict. If Walker had intended to kill Piper, he would not have bypassed his weapon and attacked with his hands. On the other hand, Walker could not claim the privilege of self-defense when he was the first aggressor unless he had withdrawn or had a reasonable belief that he had exhausted all other means of escape.[8] According to the third scenario, Walked did not fire his weapon until he was running away. The jury could conclude that he had neither sufficiently withdrawn nor reasonably believed that his resort to deadly force was necessary because there were no other means of escaping from death or great bodily harm at the hands of Piper.

Without either the privilege of self-defense or an intent to kill, Walker's action falls clearly within sec. 941.30, Stats. Piper's injuries make it indisputable that

---

[8] 939.48(2)   Provocation affects the privilege of self-defense as follows:

(a) A person who engages in unlawful conduct of a type likely to provoke others to attack him and thereby does provoke an attack is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing him to reasonably believe that he is in imminent danger of death or great bodily harm. In such a case, he is privileged to act in self-defense, but he is not privileged to resort to the use of force intended or likely to cause death to his assailant unless he reasonably believes he has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his assailant.

(b) The privilege lost by provocation may be regained if the actor in good faith withdraws from the fight and gives adequate notice thereof to his assailant.

(c) A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his assailant is not entitled to claim the privilege of self-defense.

his safety was endangered. "Shooting a gun at another is conduct imminently and per se dangerous to life."[9] Finally, shooting at an individual without justification is conduct evincing a mind which has little or no regard for human life.[10]

The shooting here was from a sufficient distance to distinguish it from that in *Holmes v. State*[11] where the gun was fired from such close proximity that a jury could not find an absence of intent to kill. In *Tucker v. State*[12] where several shotgun blasts were fired at close range toward several police officers who were hit, a conviction of endangering safety as a lesser included offense was upheld. Finally, in *Thomas v. State*[13] a claim of self-defense, because unreasonable, was properly submitted as the lesser charge of endangering safety.

Because this third version of the facts could have been reasonably believed by the jury, the lesser included offense of endangering safety by conduct regardless of life should have been submitted to the jury. The submission of lesser included offenses, where appropriate, is a right of both the accused and the State.[14] Walker was denied that right here. Accordingly, he is entitled to a new trial.

Our decision on this first issue makes it unnecessary to reach the other issues.

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.

---

[9] *State v. Melvin*, 49 Wis.2d at 254, 181 N.W.2d at 494.

[10] *Id.*

[11] *Supra* note 4.

[12] 56 Wis.2d 728, 202 N.W.2d 897 (1973).

[13] *Supra* note 4.

[14] *State v. Melvin*, 49 Wis.2d at 253, 181 N.W.2d at 494.