STATE of Wisconsin, Plaintiff-Appellant,

v.

Leroy MARTY, Defendant-Respondent.

Court of Appeals

*No. 86–0371–CR. Submitted on briefs October 17, 1986.—*
*Decided February 24, 1987.*

(Also reported in 404 N.W.2d 120.)

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *T. Christopher Kelly* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   The state appeals from an order granting defendant a new trial because of ineffective assistance of counsel. Because the trial court correctly concluded that defendant's trial counsel was ineffective, thereby prejudicing defendant, we affirm. We do not address defendant's argument that he is entitled to a new trial because of errors in admitting and excluding evidence.

Defendant was charged with five counts of sexual assault, four alleging sexual contact and one alleging sexual intercourse. The sexual intercourse charge was dismissed prior to trial, and defendant was found guilty of the other charges. The trial court granted defendant's motion for a new trial because of ineffective assistance of counsel.

The trial court made findings and explained its reasons for ordering a new trial. It found that the victim was the only state's witness to the assault, and that her credibility was essential for a conviction. Though the victim told police that defendant entered her room through a window on two occasions and assaulted her, she changed her story at the preliminary examination, claiming one entry through the window and one through a door. At trial, she testified that defendant had entered her room through the door, denied that the window was inoperable, and said

that defendant could get into her bedroom through the window.

Attorney Roger Merry represented defendant at the preliminary hearing. The victim lived with defendant, her stepfather. Merry was their landlord, and knew that the window entrance had been nailed and painted shut prior to the alleged assault. He believed that this information was so critical that he withdrew from the case to enable him to be a witness. He also told defendant's new trial counsel that two state's witnesses who would provide "other crimes" evidence against defendant could be impeached by other witnesses.

Defendant's trial counsel did not call Attorney Merry at trial, did not question the inoperability of the window, and did not interview or attempt to impeach the state's two witnesses as Attorney Merry suggested. At the postconviction hearing, trial counsel testified that he did not pursue the window testimony because ⅃e feared that would lead to the jury's discovery of the victim's allegation that defendant had had intercourse with her at another time. He testified that he did not impeach the two "other crimes" witnesses because he wanted to focus on his alibi defense.

The trial court found that the window evidence was critical, that it could have been put before the jury without the risk identified by defendant's trial counsel and that an ordinarily prudent attorney would have done so. It disbelieved trial counsel's reasons for failing to impeach the "other crimes" witnesses, finding that an ordinarily prudent attorney would have investigated the witnesses and their stories. The court found the errors to be critical and pervasive, that the state's case was based entirely on

the victim's testimony, and that trial counsel focused the defense on relatively unimportant matters. It concluded that the errors were prejudicial, and ordered a new trial.

■

A person charged with a crime has a right to effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution and by art. I, sec. 7 of the Wisconsin Constitution. *State v. Johnson,* 126 Wis. 2d 8, 10, 374 N.W.2d 637, 638 (Ct. App. 1985), *rev'd on other grounds,* 133 Wis. 2d 207, 395 N.W.2d 176 (1986). *Strickland v. Washington,* 466 U.S. 668 (1984) set out the federal test for ineffective assistance of counsel. *Johnson* is the most recent discussion of the *Strickland* rule in a Wisconsin setting. Because the *Johnson* court found a denial of effective assistance of counsel under the federal constitution, it did not address art. I, sec. 7 of the Wisconsin Constitution. *Id.,* 133 Wis. 2d at 224, 395 N.W.2d at 184.

■

Ineffective assistance of counsel claims under the sixth amendment require a two-part analysis. First, counsel's performance must be deficient; second, the deficient performance must be prejudicial. *Johnson,* 133 Wis. 2d at 216–17, 395 N.W.2d at 181, quoting *Strickland,* 466 U.S. at 687. Both the performance and prejudice components are mixed questions of law and fact. *State v. Pitsch,* 124 Wis. 2d 628, 633–34, 369 N.W.2d 711, 714 (1985), quoting *Strickland,* 466 U.S. at 698. We will not reverse a trial court's findings of fact unless they are clearly erroneous. Sec. 805.17(2), Stats. If the facts have been established, whether counsel's representation was deficient and, if it was, whether it was prejudicial are questions of law, which

we determine *de novo. Pitsch,* 124 Wis. 2d at 634, 369 N.W.2d at 715. The *Strickland* "deficiency" test, as repeated in *Johnson,* determines whether counsel's representation "fell below an objective standard of reasonableness." *Johnson,* 133 Wis. 2d at 217, 395 N.W.2d at 181.

There are no standards by which to judge counsel's performance. *Pitsch,* 124 Wis. 2d at 636, 369 N.W.2d at 716. However, in deciding an ineffectiveness claim, a court

> must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Johnson,* 133 Wis. 2d at 217, 395 N.W.2d at 181, quoting *Strickland,* 466 U.S. at 690.

The "prejudice" required by the second part of the *Strickland* test is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Johnson,* 133 Wis. 2d at

222, 395 N.W.2d at 183, quoting *Strickland,* 466 U.S. at 687.

Here, the federal and state tests may diverge. *Strickland* requires a defendant to prove prejudice. *Pitsch,* 124 Wis. 2d at 641, 369 N.W.2d at 718. However, in *State v. Davis,* 114 Wis. 2d 252, 257, 338 N.W.2d 301, 303 (Ct. App. 1983), we said:

> If the trial court determines that trial counsel's actions were unreasonable and therefore violative of his sixth amendment right to assistance of counsel, it must further determine whether such action was prejudicial to the defendant. At this juncture in this process, it is the burden of the state to prove that the unreasonable actions of counsel are harmless beyond reasonable doubt. An error of constitutional dimension is prejudicial unless a court can conclude it is harmless beyond a reasonable doubt. [Footnote omitted.]

We need not consider whether the federal and state tests differ unless we conclude that trial counsel's representation was ineffective. We therefore first consider the attorney's performance. The trial court's lengthy decision and order contained its findings, reasoning and conclusions. We will review this order using the "performance" and, if necessary, "prejudice" tests.

## PERFORMANCE

We have set out the trial court's findings as to what defendant's trial counsel failed to do, and its findings as to his reasons for not introducing the "window" and "other crimes" evidence. The trial court had the opportunity to view defendant's attorney during his explanation of his trial preparation

and presentation. The trial court is the ultimate arbiter of witness credibility. *In Matter of Estate of Dejmal,* 95 Wis. 2d 141, 152, 289 N.W.2d 813, 818 (1980). Its findings, depending in part on witness credibility, are heavily weighted against reversal. We accept the trial court's findings because of their dependence on witness credibility and because they are not clearly erroneous. Sec. 805.17(2), Stats.

Though *Strickland* does not specifically require an inquiry into what an ordinarily prudent lawyer would have done under the circumstances, that step is included in the *Strickland* requirement that the trial court determine whether the attorney's "acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. We adopted this intermediate step in *Davis,* 114 Wis. 2d at 256, 338 N.W.2d at 303.

The state's assertion of trial court error specifically focuses on this step. It views the trial court's inquiry into what an ordinarily prudent lawyer would have done as impermissible "second guessing." The state argues:

> [T]he court did not content itself with determining whether there was a factual and legal basis in reason for trial counsel's choices. Rather, the trial court went on to substitute its own judgment for that of counsel, and determined that certain choices and tactics would have produced a better defense ....
>
> ...
>
> Because there was a basis in reason grounded in the facts and the law for [trial counsel's] tactical choice, the trial court should have accepted it as reasonable, without further scrutiny.

Were the trial court required to accept the attorney's testimony at face value, its conclusion that his representation was ineffective would be erroneous. There is a strong presumption that an attorney's choice is sound trial strategy. *State v. Harris,* 133 Wis. 2d 74, 81, 393 N.W.2d 127, 130 (Ct. App. 1986), quoting *Strickland,* 466 U.S. at 689–91. The attorney's explanation that he did not introduce evidence that would lead to other, prejudicial evidence being admitted, is a rational explanation for this action. However, we do not stop with the explanation given. In *State v. Felton,* 110 Wis. 2d 485, 502–03, 329 N.W.2d 161, 169 (1983), the court said:

> [W]hen we look to a lawyer's conduct and measure it against this court's standard to determine effectiveness, we cannot ratify a lawyer's decision merely by labeling it, as did the trial court, "a matter of choice and of trial strategy." We must consider the law and the facts as they existed when trial counsel's conduct occurred. Trial counsel's decisions must be based upon facts and law upon which an ordinarily prudent lawyer would have then relied. We will in fact second-guess a lawyer if the initial guess is one that demonstrates an irrational trial tactic or if it is the exercise of professional authority based upon caprice rather than upon judgment.

The trial court was following *Felton* when it inquired into what action an ordinarily prudent lawyer would have taken, given the knowledge of the paint-sealed window and potentially impeachable witnesses. It did not find, as the state asserts, that there were reasonable grounds for choosing a trial tactic other than the one used. This is shown by the trial

court's finding regarding the paint-sealed window evidence in evaluating counsel's performance.

> I find that [trial counsel's] failure to take even the safe preliminary steps to see that such an important item came before the jury did not rise to the level of performance which is expected of an ordinarily prudent lawyer at that time in those circumstances.

*Davis,* 114 Wis. 2d at 256, 338 N.W.2d at 303, holds that what an ordinarily prudent lawyer would have done is a question of fact. We erred in this holding. "Ordinarily prudent" and "reasonable" are equivalent terms. *Cramer v. Theda Clark Memorial Hospital,* 45 Wis. 2d 147, 150, 172 N.W.2d 427, 428 (1969). Reasonableness is a question of law. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). Nonetheless, we are to give weight to the trial court's conclusion as to reasonableness because that legal conclusion is intertwined with the factual findings supporting it. *Id.*

Giving weight to the trial court's conclusion that trial counsel did not act as an ordinarily prudent lawyer, we also conclude that an ordinarily prudent lawyer would have recognized, as did the trial court, that the victim's testimony was, in the trial judge's words, "the whole case," and that impeaching the testimony of the "other crimes" witnesses would have been very valuable. The victim's credibility was vital. Evidence which showed that the victim was lying or that her perception of reality was flawed would have been viewed by an ordinarily prudent lawyer as essential. Possible impeachment of two witnesses who

gave other crimes evidence would have been just as essential. Defendant has fulfilled the *Strickland* "deficient performance" test.

## PREJUDICE

Whether a defendant was prejudiced by counsel's deficient performance is a question of law, which we review *de novo. Pitsch,* 124 Wis. 2d at 634, 369 N.W.2d at 715. *Pitsch* considered a claim under the federal, not the Wisconsin Constitution. *Id.* at 647, 369 N.W.2d at 721. Defendant, though claiming a right under the Wisconsin Constitution, uses this standard of review, and does not suggest that a more deferential review is required under an analysis governed by art. I, sec. 7 of the Wisconsin Constitution. Nor does defendant argue that the Wisconsin Constitution requires that effective representation of counsel be defined more favorably to him, an approach used by the Michigan Court of Appeals. *People v. White,* 370 N.W.2d 405, 408–09 (Mich. App. 1985).

The state argues that the trial court erred by placing the burden on the state to disprove prejudice rather than requiring defendant to show that he was prejudiced by his attorney's deficient performance. We need not consider this assertion for two reasons.[1]

---

[1] In *Davis,* 114 Wis. 2d at 257, 338 N.W.2d at 303 we said:

> If the trial court determines that trial counsel's actions were unreasonable and therefore violative of his sixth amendment right to assistance of counsel, it must further determine whether such action was prejudicial to the defendant. At this juncture in this process, it is the burden of the state to prove that the unreasonable actions of counsel are harmless beyond a reasonable doubt. [Footnote omitted.]

The state asserts that this excerpt from *Davis* is erroneous because in *State v. Fencl,* 109 Wis. 2d 224, 230–31, 325 N.W.2d 703,

First, *Pitsch* holds that whether a defendant is prejudiced is a question of law, which we review without deference to the trial court. *Pitsch,* 124 Wis. 2d at 634, 369 N.W.2d at 715. Therefore, we will consider *de novo* whether defendant was prejudiced.[2] Second, "burden of proof" is a concept ill-suited to determining legal issues; it describes a requirement of proving facts. In *Berg v. Board of Regents,* 40 Wis. 2d 657, 662, 162 N.W.2d 653, 656 (1968), the court said: "As a part of the process for determination of asserted facts, the allocation of the burden of proof is a rule of evidence. ..." Though burden of proof is also described as a burden of persuasion, this is also a method of dealing with facts, not law. In *Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 86–87, 253 N.W.2d 526, 533 (1977), the court said:

> The trial court and attorneys recognized that burden of proof encompasses two separate burdens—the burden of going forward with the evidence of the alleged fact and the burden of persuading the trier of fact that the alleged fact is true. McCormick on Evidence, sec. 336, pp. 783, 784

708 (1982), the court held that the burden of proving prejudice was on defendant.

Both *Fencl* and *Davis* were decided prior to *Strickland.* The *Davis* court's interpretation of the sixth amendment right to counsel, being inconsistent with *Strickland,* is in error and we therefore overrule that portion of *Davis.* However, neither *Davis* nor *Fencl* cites or discusses art. I, sec. 7 of the Wisconsin Constitution. Neither decides whether the Wisconsin Constitution requires that the state prove that defendant was not prejudiced by counsel's deficient performance.

[2]This is consistent with the rule that whether a party has met his or her burden of proof is a question of law. *Seraphine v. Hardiman,* 44 Wis. 2d 60, 65, 170 N.W.2d 739, 742 (1969).

(2d ed. 1972); 9 Wigmore on Evidence, secs. 2485–2489 (3d ed. 1940) .... The [trial] judge commented that "he was not too concerned with burden of proof here because ... I think it is primarily a question of law based upon some facts here which don't apparently appear to be in serious dispute. There is some shaded meaning to be given to some of this testimony." An examination of the record reveals that the trial court's statement is a fair evaluation of the evidence.

■

We conclude that the burden of proof of showing prejudice discussed in *Strickland* and *Pitsch* refers to defendant's burden of proving facts upon which a conclusion of prejudice can be based.[3] We have already concluded that we accept the facts found by the trial court because they are not clearly erroneous. We therefore only need consider whether these facts, together with the undisputed facts, constitute prejudice.

The federal test for prejudice found in *Strickland* is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Pitsch,* 124 Wis. 2d at 640–41, 369 N.W.2d at 718, quoting *Strickland,* 466 U.S. at 687. One of the state tests for prejudice suggested in *State v. Dyess* is whether "the prospect of conviction would

[3]In so concluding, we have assumed that the burden to show facts was upon defendant. The trial court decided the few contested facts in defendant's favor. We have concluded, based on these facts and other undisputed facts, that defendant met his burden of proof if that burden was upon him. We therefore need not consider whether, under the Wisconsin Constitution, the state was required to prove facts supporting a conclusion that defendant was not prejudiced.

have been substantially less." *State v. Dyess*, 124 Wis. 2d 525, 546, 370 N.W.2d 222, 233 (1985). Another *Dyess* test is whether "we can be sure that the error did not contribute to the guilty verdict." *Id.* at 547, 370 N.W.2d at 233.

*Dyess* does not address prejudice or harmlessness in terms of art. I, sec. 7 of the Wisconsin Constitution. Nonetheless, we will use the *Dyess* tests because that court adopted the same test for constitutional and other error, stating, "[t]his court has often noted that there is little practical difference between the formulations of harmless error which the court has used from time to time." *Id.* at 543, 370 N.W.2d at 231.

The trial court noted "[the victim's] testimony is the whole case." We agree. The victim's credibility was vital if the state was to obtain a conviction. Any evidence showing the victim's testimony to be less believable would be reason to believe defendant's assertion that the assaults did not occur, or the basis of a reasonable doubt as to his guilt. We also conclude that evidence regarding the believability or reputation of the two "other crimes" witnesses would have been equally valuable to defendant. The jury was required to choose between two stories that differed in almost all respects. Trial counsel's deficient representation casts doubt on the reliability of the trial's result. As the court concluded in *Dyess,* the prospect of conviction would have been substantially less if the credibility of the only witnesses who incriminated defendant had been placed in doubt. Like the court in *Dyess,* we cannot be sure that the errors did not contribute to the guilty verdict. We also conclude that the errors were serious enough to deprive defendant of a trial with a reliable result. Accordingly, we affirm

the trial court's order. We therefore need not address defendant's allegations of trial errors.

*By the Court.*—Order affirmed.