COMMONWEALTH *vs.* JIM LEE, JR.

Nos. 90-P-175 & 90-P-1046.

Suffolk. December 5, 1991. - February 10, 1992.

Present: DREBEN, FINE, & GILLERMAN, JJ.

*Search and Seizure*, Expectation of privacy, Exigent circumstances. *Constitutional Law*, Search and seizure, Privacy. *Privacy.*

In a cocaine trafficking case, defense counsel's failure to file a motion to suppress evidence obtained by police as a result of a warrantless entry into a private basement area of a supermarket did not deprive the defendant of the effective assistance of counsel, where it was likely that a judge ruling on any motion to suppress evidence filed in this case would have found that the police were faced with exigent circumstances when they entered the supermarket basement without a warrant and that a motion to suppress would have been denied. [87-91]

INDICTMENT found and returned in the Superior Court Department on August 10, 1987.

The case was heard by *John D. Sheehan*, J., and a motion for a new trial, filed on May 7, 1990, was considered by him.

*Charles W. Rankin* for the defendant.

*Marina Medvedev*, Assistant District Attorney, for the Commonwealth.

FINE, J. After a jury-waived trial in the Superior Court, the defendant was convicted of trafficking in cocaine. His trial counsel did not file a motion to suppress evidence obtained by the police as a result of a warrantless entry into a private basement area in his supermarket. Unquestionably, the evidence obtained as a result of the entry had a significant influence on the verdict, and it is unlikely that any strategic considerations prevented counsel from moving to suppress it. With different counsel, the defendant moved for a new trial, claiming that trial counsel had provided ineffective assistance by failing to file any motion to suppress. The new

trial motion, supported only by the record of evidence at trial and an affidavit from the defendant describing his business premises, was denied. The present appeals are from the defendant's conviction and the denial of his motion for a new trial. The question before us is whether there is a reasonable likelihood that, if a pretrial motion to suppress had been filed, it would have been allowed. See *Commonwealth v. Lykus*, 406 Mass. 135, 140 (1989).

The relevant evidence was as follows. Around 2:30 P.M. on June 24, 1987, two undercover officers, Jeffrey Coy and Donald Gosselin, were introduced to Fitzgerald Lee, the defendant's son. They discussed the officers' interest in buying five ounces of cocaine for $4,500. Fitzgerald Lee said he would have to talk to his father and proceeded to make a call from a pay phone. Upon completion of the telephone call, Fitzgerald Lee, Officers Coy and Gosselin, and another individual drove by automobile to the defendant's supermarket. Officer Coy and Fitzgerald Lee went inside. Fitzgerald Lee approached the defendant, and the two engaged in a whispered conversation. Fitzgerald Lee and Officer Coy then opened a door marked "employees only" and descended a staircase to the basement. They discussed the drug transaction, and Officer Coy gave Fitzgerald Lee a $200 advance. Officer Coy returned to the automobile. He saw the defendant leave the supermarket briefly and stare at the three individuals waiting in the vehicle. Fitzgerald Lee then returned to the vehicle and told the group they would have to wait elsewhere for word that the drugs were ready. The group drove to Fitgerald Lee's apartment, and Officers Coy and Gosselin waited outside in the vehicle. Word that the drugs were ready came around 4:00 P.M., and the group returned to the supermarket. Officer Coy and Fitzgerald Lee again descended to the basement. Doreen Smith, an employee of the defendant (who was tried with the defendant but acquitted), handed Fitzgerald Lee a bag containing cocaine. Officer Coy handed over $4,500 in currency, and Fitzgerald Lee and Doreen Smith proceeded to count the money.

Boston police detective Thomas Matheson had previously recorded the serial numbers on the larger bills. Officer Coy and Fitzgerald Lee returned to the waiting vehicle, which drove off. A police surveillance team quickly stopped the vehicle and arrested the occupants near the defendant's supermarket. Meanwhile, Detective Matheson entered the basement and found the defendant and Doreen Smith counting the money Officer Coy had just used to pay for the drugs. The defendant and Doreen Smith were placed under arrest.

The police officers had no warrant to enter the basement area either to search it or to make an arrest. On the evidence presented, a reasonable fact finder could find that, even though the basement area of the supermarket was being used for commercial rather than residential purposes, the defendant had a reasonable expectation of privacy in it which was entitled to protection under the Fourth Amendment to the United States Constitution. See *Commonwealth* v. *Cadoret*, 388 Mass. 148, 150, 151 (1983). The police were without authority, therefore, to make a nonconsensual entry into the basement area unless they had probable cause to make an arrest or to search for evidence and, in addition, there were exigent circumstances. See *Payton* v. *New York*, 445 U.S. 573, 590 (1980); *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975); *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. 290, 292-293 (1987). The existence of probable cause either to search the basement or arrest the defendant not being in dispute, the sole issue before us is whether the Commonwealth met its burden of showing, by strict standards, *Commonwealth* v. *Forde*, 367 Mass. at 800, the existence of exigent circumstances sufficient to excuse the failure of the police to obtain a warrant. See *Commonwealth* v. *Hall*, 366 Mass. 790, 801 (1975); *Commonwealth* v. *Forde*, *supra.* "[T]he question whether exigent circumstances exist depends upon an evaluation of all the circumstances." *Commonwealth* v. *Huffman*, 385 Mass. 122, 126 (1982).

The defendant contends that the police officers involved in the investigation could have sought a warrant to search the basement or to arrest the defendant much earlier in the day,

after the drug deal had been discussed and $200 had changed hands. If the police could have obtained a warrant earlier in the day, they could not justify the warrantless entry into the basement on the basis of exigency. See *Commonwealth* v. *Forde*, 367 Mass. at 801-803; *United States* v. *Rubin*, 474 F.2d 262, 268 (3d Cir. 1973); 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.1(f), at 604 n.174 (2d ed. 1987). Until Officer Coy emerged from the defendant's store with the drugs, however, the arrangement remained tentative and uncertain at best, particularly as to when and where the sale would take place. It would have been impracticable, therefore, for the officers to have requested a magistrate to issue a warrant much before the officers and Fitzgerald Lee returned to the supermarket to complete the transaction. See *Commonwealth* v. *Cast*, 407 Mass. 891, 904 (1990); *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 599 (1991). Once the time and place of the exchange were set, events moved too rapidly to make it feasible for the officers to obtain a warrant.

Factors to be considered in determining exigency when there is insufficient time to obtain a warrant have been enumerated. See *Commonwealth* v. *Forde*, 367 Mass. at 807; *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 700 (1979); *Dorman* v. *United States*, 435 F.2d 385, 392-393 (D.C. Cir. 1970); 2 LaFave, *supra* § 6.1(f), at 596-598 (warrantless entry to arrest) & § 6.5(a), (b), & (d) (warrantless entry to search). See also *United States* v. *Rubin*, 474 F.2d at 268-269 (frequently both warrantless search and warrantless arrest are involved; criteria are similar). Many of the factors mentioned in those authorities do not apply to the instant case. Three, however, are applicable here. Two of these are (1) whether there was probable cause to believe the suspect committed a felony and strong reason to believe the suspect was present in the place to be entered, and (2) whether entry was made peaceably and during daylight. In this case, before the police entered the basement, they had probable cause to arrest the defendant and strong reason to believe the evidence would be found there. The entry was

peaceable and was made during daytime hours. The third factor, of crucial significance here, is whether delay attendant upon securing a warrant was likely to result in destruction or disappearance of evidence. See *Commonwealth* v. *Hall*, 366 Mass. at 801-802; *Commonwealth* v. *Forde*, 367 Mass. at 801; *Commonwealth* v. *Huffman*, 385 Mass. at 125-126; *United States* v. *Rubin*, 474 F.2d. at 268; 2 LaFave, *supra* § 6.5(a) & (b).

The Commonwealth contends that the circumstances were exigent once the buy was completed because there was an urgent need to seize the currency for use as evidence. Otherwise, there was a danger, given the nature of the defendant's business, that the bills, whose serial numbers had been recorded by the police, would be used in commerce or otherwise quickly dispersed, and the evidence would have vanished. The money used to pay for the drugs was crucial potential evidence as it was the link to the supplier. The circumstances were viewed by this court as exigent on very similar facts in *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. at 597-598, 599. See also *Diggs* v. *State*, 531 N.E.2d 461 (Ind. 1988); *State* v. *Miller*, 19 Or. App. 604 (1974); *State* v. *Peardot*, 119 Wis. 2d 400, 402-406 (1984). Compare *People* v. *Blasius*, 435 Mich. 573 (1990).

The defendant argues that nothing in the record suggests that, at the time the police entered the basement without a warrant, he had any awareness of the police investigation. He contends, therefore, that the fear that evidence would disappear was based not upon any specific threat, but upon pure speculation. Compare *United States* v. *Veillette*, 778 F.2d 899, 901-903 (1st Cir. 1985), cert. denied, 476 U.S. 1115 (1986); *Commonwealth* v. *Hall*, 366 Mass. at 802-803; *Commonwealth* v. *Huffman*, 385 Mass. at 123-124, 125-126. Although the defendant is correct that it would not have been sufficient for the Commonwealth to establish exigency by showing a mere possibility that the evidence would disappear, we think, on the basis of the officers' testimony at trial, the Commonwealth would have been able to make the necessary showing. It is true that there was no specific evidence of

the defendant's awareness of the investigation or of his, or anyone else's, intention immediately to disperse the funds. However, the defendant operated a supermarket in which currency was constantly changing hands, and, presumably, large numbers of people were regularly entering, transacting business, and leaving. Moreover, there was a likelihood that the defendant would soon become "aware that the police [were] on [his] trail," *United States* v. *Rubin*, 474 F.2d at 268, and that the money might be marked. The arrest of Fitzgerald Lee and the others was made near the supermarket, and it was possible that the defendant would soon have been alerted to that fact. Fitzgerald Lee, himself, would soon have been able to alert his father to his arrest by telephone from the police station. Moreover, drug dealers may be expected to know of the police practice of using marked money for undercover drug buys. In these circumstances, we think it reasonable for the officers to have believed that some or all of the bills would leave the supermarket in the hands of someone other than the defendant before a warrant could be obtained. This would be so even if officers stationed at the supermarket exits could have arrested the defendant had he sought to leave.

We also weigh in the balance, for the purpose of determining whether there were sufficiently exigent circumstances to justify the police in entering the premises without a warrant, the nature of the area invaded and the extent to which an occupant would have had a reasonable expectation of privacy. Although entitled to reasonable Fourth Amendment protection, the basement area was not a dwelling, but, instead, a supermarket stock room area open at least to employees. Compare *G.M. Leasing Corp.* v. *United States*, 429 U.S. 338, 353 (1977); *Donovan* v. *Dewey*, 452 U.S. 594, 598-599 (1981); *Dow Chem. Co.* v. *United States*, 476 U.S. 227, 236-237 (1986).

In sum, we think it likely that a judge ruling on any motion to suppress filed in this case would have found that the police were faced with exigent circumstances when they entered the supermarket basement without a warrant and that

a motion to suppress would have been denied. The defendant has not shown, therefore, that failure to file the motion deprived him of the effective assistance of counsel at his trial.

> *Judgment affirmed.*
> *Order denying motion for*
> *new trial affirmed.*